UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CERTIFIED COLLECTIBLES GROUP,
LLC and CERTIFIED GUARANTY
COMPANY, LLC,

    Plaintiffs,

v.                                                        Case No. 8:24-cv-0301-KKM-AAS

BRANDON TERRAZAS and
AYANA TERRAZAS,

    Defendants.
_____

## ORDER

    Certified Collectibles Group, LLC (CCG) and Certified Guaranty Company, LLC (CGC) move for an ex parte temporary restraining order and preliminary injunction against Brandon Terrazas and Ayana Terrazas. (Doc. 11). Specifically, CCG and CGC seek an order temporarily restraining the Terrazas, former employees, from engaging further in a fraudulent scheme to sell collectible comic books bearing CGC's protected trademark under pseudonyms online. CCG and CGC also seek expedited discovery related to recovering all infringed materials. Because CCG and CGC have shown a likelihood of success on the merits and a presumption of irreparable harm attaches for trademark infringement, I grant the motion.

I.   BACKGROUND

CGC is an "industry leader for the authentication and grading (known together as 'certification') of pop culture collectibles, including comic books." Am. Compl. (Doc. 10) ¶ 2. CGC employs more than twenty "grading experts who examine and grade comic books according to established and internationally accepted standards, allowing such comic books to be valued for collecting, trading, and selling." *Id.* CGC "was the first of its kind to establish its very own comic book grading" system. *Id.* ¶ 20. CCG is the sister company of CGC. *Id.* ¶ 2. CCG also provides "expert services relating to valuing and certifying collectible goods," including comic books. *Id.* ¶ 18.

CGC labels every comic book to certify and authenticate each book. *Id.* at ¶ 21. CGC's label gives "each comic book a grade of .5 to 10, along with a designation relating to the page quality of the comic book." *Id.* ¶ 21. The "labels vary in color and description based on the grade or other pertinent attribute[s] of the collectible." *Id.* ¶ 3. Additionally, each CGC labels contain a "bar code, description, (such as 'fine,' 'fine/very fine,' and 'mint'), page quality designations, and an indication of whether or not the comic book is signed by its author or artist." *Id.* ¶ 23. Labels that contain "the CGC SIGNATURE SERIES® trademark" signify that owners had their comic books "signed by a comic book artist or creator in the presence of a CGC witness to verify the signature's authenticity."

*Id.* ¶ 3. Further, once a comic is graded, "the comic books are then 'slabbed,' a term of art meaning encased in UV-resistant plastic to prevent damage." *Id.* ¶ 23.

"CGC has consistently used its trademarks including . . . its federally registered CERTIFIED GUARANTY COMPANY® name, CGC® name, CGC TRADING CARDS® name, CGC SIGNATURE SERIES® name[,] CGC HOME VIDEO®, CGC INSIDER®, and CGC VIDEO GAMES® (collectively, the 'CGC Marks')." *Id.* ¶ 4; *see also id.* ¶ 28 (similar). "CGC is the exclusive distributor or licensor of CGC products in the United States that bear its CGC Marks." *Id.* ¶ 29.

CGC and CCG allege that the Terrazas, both former employees of either CGC or CCG beginning in 2022, engaged in a fraudulent scheme by "stealing customers' comic books from CGC's facilities, generating duplicates of legitimate, authenticated CGC grade labels belonging to highly valuable comic books, encapsulating less valuable, lower grade comic books with these higher value duplicate labels, and offering such mislabeled goods to the public at large." *Id.* ¶¶ 5, 39. As a condition of their employment, the Terrazas were prohibited from "commercially dealing in collectibles, including, but not limited to, selling or reselling CGC-graded comic books, online or elsewhere in the marketplace." *Id.* ¶ 40. Only upon certain conditions, could CGC employees sell comic books per the company's policy. *See id.* at ¶¶ 41–45. For example, employees of CGC are permitted to sell no more than four collectibles per year. *Id.* ¶¶ 40–42. To do so, employees must provide notice of

intent to sell to Human Resources. *Id.* ¶ 42. And "as a benefit of employment, CGC employees were permitted to submit for authentication and grading a maximum of twenty of their own collectibles per year" from their own collection free of charge. *Id.* ¶ 43.

As a result of the Terrazas' conduct, "consumers searching for or purchasing a CGC-graded comic book believed they were receiving a legitimately graded book by CGC, when in reality, they were receiving a lower graded comic book with a duplicate, higher-graded CGC label taken from another (higher graded) book." *Id.* ¶ 5.

CGC uncovered the fraudulent activity in September 2023 and has since conducted interviews with the Terrazas. *Id.* ¶ 48. Brandon Terrazas has confessed "to stealing twenty-three customer-submitted comic books from CGC's facilities." *Id.* ¶ 50. The Terrazas scheme included Brandon Terrazas taking comic books from the shelf, bringing them to his desk, discarding books' CGC-graded wrapping and barcodes, resubmitting them for grading, and then publicly advertising and selling "the comic books on eBay or at trade shows." *Id.* ¶¶ 51–52. In doing so, Brandon Terrazas "received at least $26,895 in aggregate revenue from these fraudulent transactions." *Id.* ¶ 53. Ayana Terrazas also assisted in the scheme by selling the stolen comic books on eBay under an account that remains active and still has postings for two stolen comic books. *Id.* ¶¶ 60–63.

Based on the Terrazas' alleged conduct, CGC and CCG filed this action asserting eight causes of action for trademark infringement in violation of the Lanham Act, 15

U.S.C. 1051 *et seq.*, (Counts I–IV); common law trademark infringement (Count V); conversion (Count VI); conspiracy (Count VII); and unjust enrichment (Count VIII). *See id.* ¶¶ 72–131.

## II. LEGAL STANDARD

To obtain a temporary restraining order, CCG and CGC must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1). Ex parte temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods,*

5

*Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974).

### III. CONCLUSIONS OF LAW

**A.** CGC and CCG demonstrate a strong probability of proving at trial that (1) consumers are likely to be confused by the Terrazas' advertisement, promotion, sale, offer for sale, or distribution of goods bearing or using counterfeits, reproductions, or colorable imitations of the CGC Marks, and (2) the products the Terrazas are selling and advertising for sale are products that bear identical and unauthorized CGC Marks. *See Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) (applying test to § 32 of the Lanham Act); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (applying test to § 43 of the Lanham Act); *Investacorp, Inc. v. Arabian Inv. Banking Corp. (Investcorp) E.C.*, 931 F.2d 1519, 1521–22 (11th Cir. 1991) (applying same test to Florida claims of unfair competition and trademark infringement).

**B.** Because of the infringement of the CGC Marks, CGC and CCG are presumed to likely to suffer an irreparable harm if a temporary restraining order is not granted. 15 U.S.C. § 1116(a); *see also Levi Strauss & Co.*, 51 F.3d at 986 ("This court has previously stated that . . . trademark infringement by its nature causes irreparable harm." (quotation omitted)). The facts detailed in the amended complaint, motion for temporary restraining order, and accompanying declarations, (Docs. 11-1, 11-2), demonstrate that immediate

and irreparable loss, damage, and injury will result to CGC and CCG and to consumers before the Terrazas can be heard in opposition unless the request for ex parte relief is granted:

 1. The Terrazas still have at least two CGC comic books listed for sale on eBay bearing counterfeit and infringing trademarks in violation of CDC's rights;

 2. Following Brandon Terrazas's termination from CGC, he continues to seek comic books from employees against CGC's policies.

 3. There is good cause to believe that more counterfeit and infringing products bearing the CGC Marks will appear in the marketplace; that consumers are likely to be misled and confused by the counterfeit products; and that CGC may suffer loss of sales for its genuine products and suffer reputational harm and loss of goodwill.

 C. The balance of potential harm to the Terrazas in restraining their marketing, advertising, or sale of the counterfeit goods if a temporary restraining order is issued is outweighed by the potential harm to CGC and CCG, their reputations, and their goodwill if such relief is not issued.

 D. The public interest favors issuance of the temporary restraining order to protect CGC's trademark interests, to encourage respect for the law, and to protect the public from being defrauded by the illegal sale of counterfeit goods.

Accordingly, CGC's and CCG's motion for a temporary restraining order (Doc. 11) is **GRANTED** and, based on good cause shown, expedited discovery from Defendants permitted, *see TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 615–16 (S.D. Fla. 2019) (explaining that "federal courts in their discretion may allow parties to conduct expedited discovery" if "good cause" is shown), under the terms detailed below:

(1) Defendants, their agents, employees, representatives, partners, joint venturers, and anyone acting on behalf of, or in concert with Defendants, are temporarily restrained as follows:

    i. Using any reproduction, counterfeit, copy or colorable imitation of CGC's trademarks to identify any goods not authorized by CGC;

    ii. Engaging in any course of conduct likely to cause confusion, deception or mistake, or to injure CGC's business reputation;

    iii. Using a false description or representation including words, symbols, or artwork tending falsely to describe or represent Defendant's unauthorized goods as being those of CGC or sponsored by or associated with CGC and from offering such goods into commerce;

    iv. Further infringing the CGC Marks by distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting, displaying or otherwise

disposing of any products not authorized by CGC bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the CGC Marks;

**v.** Using any simulation, reproduction, counterfeit, copy or colorable imitation of the CGC Marks in connection with the promotion, advertisement, display, sale, offering for sale, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such products in any way to CGC, or to any goods sold, manufactured, sponsored or approved by, or connected with CGC;

**vi.** Making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any products distributed, or sold by Defendants are in any manner associated or connected with CGC, or are sold, manufactured, licensed, sponsored, approved or authorized by CGC;

**vii.** Secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books, records, or other documents that contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products that infringe the CGC Marks; and

   **viii.** Effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (i) through (vii).

  **(2)** Within (14) days after receiving service of this Order, Defendants shall serve upon CGC's counsel a written report under oath providing:

   **i.** the name and location and URL of any and all websites that Defendants own or operate and the name, location, account numbers and URL for any and all user accounts and merchant storefronts that Defendants own or operate on any third-party service provider platform; and

   **ii.** the complete sales records for any and all sales of counterfeit or infringing products by Defendants, or in any way involving Defendants, including but not limited to, the number of comic books sold, the purchaser of such products, the price per unit, total gross revenues received (in U.S. dollars), and the dates thereof;

   **iii.** all information in their possession that would allow CGC to identify the victims of their infringing activities and shall cooperate with CGC in efforts to locate such victims; and

   **iv.** the location of all comic books alleged as stolen and bearing identical and unauthorized CGC Marks in Defendants' possession, custody or control, which shall

be delivered to Plaintiffs for their custody and retention during the pendency of this action.

(3) CGC may serve interrogatories pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure. Within fourteen (14) days of service, Defendants shall provide written responses to the interrogatories to CGC's counsel under oath.

(4) CGC may serve requests for the production of documents pursuant to FED. R. CIV. P. 26 and 34. Within fourteen (14) days of service, Defendants shall produce all documents in response to the request for production to CGC's counsel.

(5) Within fourteen (14) days of receipt of service of this Order, any third-party service providers who are served with this Order, including, but not limited to, eBay, shall identify any and all of Defendants' user accounts and merchant storefronts, and provide CGC's counsel with a summary report containing account details for any and all user accounts and merchant storefronts, which shall include, at a minimum:

   i. any and all user accounts and Defendants' merchant storefronts and account details, including, but not limited to, identifying information and account numbers for any and all user accounts and Defendants' merchant storefronts that Defendants have ever had or currently maintain with the third party service providers;

   ii. the identities, location and contact information, including any and all e-mail addresses, of Defendants that were not previously provided;

    **iii.** the identities, location, and contact information, including any and all e-mail addresses, of users who purchased products from Defendants; and

    **iv.** the nature of Defendants' businesses and operations, methods of payment, methods for accepting payment and any and all financial information, including, but not limited to, information associated with Defendants' user accounts and Defendants' merchant storefronts, a full accounting of Defendant' sales history and listing history under such accounts and Defendants' financial accounts with any and all financial institutions associated with Defendants' user accounts and Defendants' merchant storefronts.

 **(6)** This Order shall remain in effect for fourteen days from the date of entry of this Order and expires on **February 21, 2024, at 9:00 P.M.** unless extended by further Court order, or until the Court rules on the motion for a preliminary injunction.

 **(7)** A preliminary injunction hearing is scheduled for **February 20, 2024**, at **9:00 A.M.** in **Tampa Courtroom 13B**, at which time the defendant and any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on CGC's and CCG's requested preliminary injunction. Brandon Terrazas and Ayana Terrazas are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d); FED. R. CIV. P. 65(b), The All Writs Act,

28 U.S.C. § 1651(a); and this Court's inherent authority.

**ORDERED** in Tampa, Florida February 7, 2024.

*Kathryn Kimball Mizelle*
Kathryn Kimball Mizelle
United States District Judge